RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0149p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

EDWIN J. SANTIAGO,

*Defendant-Appellant*.

No. 24-5762

─────────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:22-cr-00293-1—Eli J. Richardson, District Judge.

Decided and Filed:  June 6, 2025

Before:  GRIFFIN, LARSEN, and MATHIS, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Manuel B. Russ, Nashville, Tennessee, for Appellant.  Brooke C. Farzad, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

─────────────────

## OPINION

─────────────────

LARSEN, Circuit Judge.  A jury convicted Edwin Santiago of being a felon in possession of a firearm.  The district court sentenced him to a within-Guidelines sentence of 56 months' imprisonment.  Santiago challenges his conviction and sentence.  For the following reasons, we AFFIRM.

## I.

On September 21, 2021, Detectives Dustin Tidwell and Justin Miller of the Metropolitan Nashville Police Department went in plain clothes to Auto Market, a used car dealership, to serve a subpoena. While they were standing outside the dealership, a car emitting "the obvious odor of marijuana" pulled into the parking lot. R. 172, Trial Tr., PageID 950. The car passed within fifteen to twenty feet of the detectives and parked four or five spaces away from them. When the driver opened his car door to exit, the smell of marijuana grew stronger. No one else was in the car. The officers later identified the driver as Edwin Santiago.

As Santiago entered the Auto Market, the detectives saw a pistol on his waistband. Though open carry is legal in Tennessee, possessing a firearm while under the influence of marijuana is not. The detectives suspected Santiago of possessing the firearm while under the influence and decided to detain him once he exited the store. They put on police vests and turned on their body cameras in preparation for the encounter.

The bodycam footage reveals the following: After Santiago left the store, the detectives approached him, and Miller instructed him to keep his hands up. Miller then began to handcuff Santiago, while Santiago repeatedly asked, "What's going on?" R. 26-1, Detective Tidwell's Bodycam Footage, 00:30–00:50. Tidwell responded, "It reeks of weed, you just pulled up here, okay? It reeks of weed. . . . [Y]ou've got a gun on your hip, man." *Id.* at 00:43–00:50. Miller, meanwhile, pulled the pistol out of Santiago's waistband. At this point, Santiago denied ownership of the pistol and shifted his body slightly; Miller grabbed his arm and yelled, "Stop!" *Id.* at 00:48–00:51. The officers then handcuffed Santiago.

Trial testimony revealed that, after handcuffing Santiago, Miller patted him down, took Santiago's wallet out of his pocket, and retrieved Santiago's ID. A background check disclosed that Santiago was a felon. So Miller formally placed him under arrest.

A grand jury indicted Santiago on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Santiago moved to suppress all the evidence acquired on September 21, arguing that his detention, arrest, and search were unconstitutional. The district court held a suppression hearing, where Detectives Tidwell and Miller testified to the facts

recounted above.  The manager of the Auto Market, who witnessed the arrest, also testified that he smelled an odor like marijuana around Santiago and his car.  The court noted that possessing marijuana is a crime in Tennessee, and it explained that it found the detectives' testimony about the smell of marijuana credible.  That odor, which the officers localized to Santiago alone, gave the officers reasonable suspicion for the stop and probable cause for the arrest.  So the court concluded that the warrantless arrest, and the search incident to it, were constitutional.  The court denied Santiago's motion to suppress.

Santiago, although represented by counsel during the suppression hearing, proceeded to trial *pro se*.  A jury convicted him.  The district court sentenced Santiago to 56 months' imprisonment.  Santiago now appeals through counsel.

## II.

### A.

Santiago first challenges the district court's denial of his motion to suppress.  He argues that the detectives had neither reasonable suspicion to detain him nor probable cause to arrest him.  So, he contends, the identification card procured during the search incident to his arrest should have been suppressed.  *See United States v. Waide*, 60 F.4th 327, 338 (6th Cir. 2023).

When assessing Santiago's challenge, "we review the district court's factual findings for clear error and its legal conclusions de novo."  *United States v. Sweeney*, 891 F.3d 232, 235 (6th Cir. 2018).  Because the court denied the motion to suppress, we "consider the evidence in the light most favorable to the government."  *United States v. Loines*, 56 F.4th 1099, 1105 (6th Cir. 2023) (citation omitted).

*The Terry Stop.*  The Fourth Amendment guards against unreasonable searches and seizures.  U.S. Const. amend. IV.  An officer can conduct a brief investigatory stop—a "*Terry* stop," *see Terry v. Ohio*, 392 U.S. 1 (1968)—without running afoul of the Fourth Amendment if he has "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *Navarette v. California*, 572 U.S. 393, 396 (2014) (citation omitted).  "That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the

evidence." *United States v. Foster*, 376 F.3d 577, 585 (6th Cir. 2004) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  The smell of an illegal substance, like marijuana, localized to a suspect supports a *Terry* stop.  *Id.* at 586; *United States v. McCallister*, 39 F.4th 368, 375 (6th Cir. 2022).

Here, the circumstances easily provided grounds for a *Terry* stop.  At the suppression hearing, Tidwell and Miller each testified to being familiar with the smell of marijuana through his training.  Each detective further testified that he smelled a strong odor of marijuana coming from Santiago's car when it entered the parking lot and that the smell intensified when Santiago opened his car door.  The bodycam footage shows that Tidwell told Santiago that the car "reek[ed] of weed."  R. 26-1, Detective Tidwell's Bodycam Footage, 00:43–00:45.  The manager of the Auto Market corroborated this by testifying that he also smelled an odor like marijuana around Santiago and his car.  No one else was in the car with Santiago.  These facts provided at least a reasonable suspicion that Santiago possessed marijuana, which is a crime under both federal and Tennessee law.  21 U.S.C. § 844(a); Tenn. Code Ann. § 39-17-418(a) (West 2025).  So the *Terry* stop was lawful.

*The Arrest.*  The parties agree that by the time Detective Miller searched Santiago's pockets, Santiago was under arrest.  And neither party disputes that a warrantless search incident to a lawful arrest is constitutional.  *See Arizona v. Gant*, 556 U.S. 332, 338 (2009).  The parties disagree, however, about whether the arrest was lawful under the Fourth Amendment.

The constitutionality of a warrantless arrest turns on its reasonableness.  *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018).  "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence," *id.*, even if the crime was "very minor," *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  To determine whether probable cause exists, "we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotation marks and citation omitted).  "Probable cause is not a high bar."  *Wesby*, 583 U.S. at 57 (quotation marks and citation omitted).  It "fall[s] below the preponderance of the evidence standard," *McCallister*, 39 F.4th at 374, requiring only a "substantial chance of

criminal activity, not an actual showing of such activity," *Wesby*, 583 U.S. at 57 (citation omitted).

This court has yet to address whether the smell of marijuana, localized to a particular person, is sufficient to constitute probable cause to arrest the person for the crime of marijuana possession. But at least four of our sister circuits have concluded that it is. *See United States v. Outlaw*, --- F.4th ---, 2025 WL 1510857, at *3 (3d Cir. May 28, 2025); *United States v. Humphries*, 372 F.3d 653, 659–60 (4th Cir. 2004); *United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017); *United States v. Perdoma*, 621 F.3d 745, 749 (8th Cir. 2010). We agree.

Our cases have repeatedly held that the smell of marijuana alone provides probable cause to search a car. *United States v. Brooks*, 987 F.3d 593, 599–600 (6th Cir. 2021) (collecting cases). In other words, our cases recognize that an odor of marijuana emanating from a vehicle "could lead a reasonable person to believe" that the drug will be found in the car. *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012) (citation omitted). Here, the question is whether probable cause existed to authorize an *arrest*, not a *search*. But the "reasonable" and "'prudent person standard' governs both contexts." *United States v. Baker*, 976 F.3d 636, 645 (6th Cir. 2020) (citation omitted). And courts generally require "the same quantum of evidence" for both searches and arrests. 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.1(b), Westlaw (database updated Nov. 2024); *see also Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996) (calling the district court's distinction between probable cause for a search and an arrest "troublesome" because even though the two determinations "contain different inquiries," they "are measured by similar objective standards"). So if, in the search context, the smell of marijuana alone supplies probable cause to believe that drugs are located in a particular place, the same holds true in the arrest context. Officers are justified in both contexts in believing that marijuana is present where they smell it.

Of course, to arrest a person for a possession crime, an officer must have probable cause to believe that the particular individual has committed the offense. So a marijuana smell emanating from a place would "not necessarily permit an officer to arrest all persons" found there. *Paige*, 870 F.3d at 700. But any concern for "particularity is satisfied when 'an officer smells the odor of marijuana in circumstances where the officer can localize its source to a

person.'" *Id.* (citation omitted).  In such cases, the officer has probable cause to arrest because he has reason to believe the individual has committed (or is committing) the crime of possession. *Id.*

Here, for the same reasons the detectives had reasonable suspicion to detain Santiago, they had probable cause to arrest him.  The officers smelled marijuana coming from Santiago and his car.  They were trained in identifying marijuana.  And they could particularize the smell to Santiago because he was the car's sole occupant.  The officers thus had "reasonable ground" to believe Santiago had committed a crime—possessing marijuana—in their presence.  *Baker*, 976 F.3d at 645 (citation omitted).  As a result, the ensuing warrantless search of Santiago incident to his arrest, which uncovered his ID from his wallet, was constitutional.  *See Riley v. California*, 573 U.S. 373, 392–93 (2014) (indicating that the search of an arrestee's wallet found on his person is constitutional).  The district court didn't err in denying Santiago's motion to suppress.

Santiago objects, saying that the officers could not reasonably have suspected him of any criminal activity because marijuana smells the same as hemp, and hemp is legal in Tennessee. *See* Tenn. Code Ann. § 39-17-415(c) (West 2025).  Santiago is right on the facts but wrong on the law.  We have already decided that even though illicit marijuana smells like legal hemp, the smell of marijuana still supports a *Terry* stop.  *McCallister*, 39 F.4th at 375.  As for the arrest, the Supreme Court has made clear that probable cause "does not require officers to rule out" an "innocent explanation for suspicious facts."  *Wesby*, 583 U.S. at 61.  So the mere fact that Santiago *could* have possessed hemp did not negate the officers' reasonable ground for believing Santiago possessed marijuana.  *See United States v. Bignon*, 813 F. App'x 34, 37 (2d Cir. 2020) (order) (stating that the "probable-cause finding is not undermined by the fact that [the arrestee] repeatedly told the arresting officers that he was smoking hemp, not marijuana").  Indeed, Tidwell and Miller each testified at the suppression hearing that, in the course of performing his duties as a police officer, he had never encountered someone smoking hemp.  This background experience would have led a reasonable officer to conclude there was a substantial chance that he smelled marijuana in Santiago's possession.  That Santiago *possibly* possessed hemp instead doesn't change that.

B.

Santiago next challenges his within-Guidelines sentence. He contends that his sentence was substantively unreasonable because the 18 U.S.C. § 3553(a) sentencing factors, when properly assessed, merited a downward departure. *See United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) (explaining that a substantive reasonableness challenge contends that "the court placed too much weight on some of the § 3553(a) factors and too little on others"). We review this challenge for abuse of discretion. *United States v. Johnson*, 95 F.4th 404, 418 (6th Cir. 2024). A within-Guidelines sentence is presumptively reasonable, *id.*, and that presumption holds true here.

The district court did not abuse its discretion in weighing the § 3553(a) factors. The court explained that certain facts placed Santiago's offense on the "more serious end of the spectrum." R. 192, Sent'g Hr'g Tr., PageID 1579. For example, Santiago had a "[v]ery, very bad record with firearms in the past"; he was on parole and the firearm was loaded at the time of arrest; and he had nineteen previous criminal sentences. *Id.* Yet other facts counseled in Santiago's favor: a within-Guidelines sentence would be Santiago's longest sentence yet; nothing indicated Santiago carried the firearm to commit another crime; and Santiago's pretrial detention was lengthy. With these competing considerations in mind, the court imposed a 56-month sentence, "somewhere in the middle" of the 51- to 63-month Guidelines range. *Id.* at 1592.

Santiago argues that this sentence was excessive in light of his medical condition and difficulties with his legal representation. He explained at sentencing that he's a diabetic and indicated that he had received inadequate medical care in pretrial detention. He also stated dissatisfaction with his previous lawyers' communications about his sentencing exposure.[1] Lastly, he expressed frustration about the denial of pretrial release and the ensuing challenges of conducting legal research *pro se* while incarcerated.

---

[1]Although Santiago proceeded *pro se* at trial and sentencing, counsel represented him at the suppression hearing, and he had court-appointed standby counsel at trial.

Santiago's medical condition and frustrations with his legal representation do not make his within-Guidelines sentence substantively unreasonable.  Indeed, the district court addressed what effect, if any, these factors had on his sentence.  The court acknowledged that Santiago's medical condition made his pretrial custody "worse than it [otherwise] would have been."  *Id.* at 1568.  This apparently counseled against granting the government's request for an *upward* departure.  The court, however, concluded that Santiago's complaints about his lawyers were "not reliable" and wouldn't "drive[] the sentencing" anyway.  *Id.* at 1570–71.  Similarly, the court indicated that the difficulties of conducting legal research as a detained *pro se* litigant were not pertinent to the sentencing calculation.  That the district court concluded Santiago's justifications didn't merit a downward departure does not mean the sentence was substantively unreasonable.

## C.

Finally, Santiago has filed a supplemental *pro se* brief alleging Speedy Trial, Bail Reform Act, and Due Process violations.  "[W]hen a defendant is represented by counsel and files a supplemental brief pro se, we may properly decline to consider those pro se claims."  *United States v. Dunnican*, 961 F.3d 859, 882 (6th Cir. 2020).  Counsel represents Santiago on appeal. We thus decline to entertain his *pro se* arguments.

* * *

We AFFIRM.